### Riley *v.* Allen and others.

*(District Court, W. D. Tennessee.* February 21, 1885.)

1. ADMIRALTY—PERSONAL INJURY—BEATING A DECK HAND OR ROUSTABOUT.
     The officers of a steam-boat are liable for injuries caused by severely beating a deck hand or roustabout.

2. SAME SUBJECT—DISCHARGE—IMPROPER TIME AND PLACE.
     A deck hand cannot, for mere inefficiency, be driven from a steam-boat at an inhospitable place on a dark, cold night, whereby he was subjected to unnecessary suffering and discomfort, without rendering the officers liable to damages for such treatment.

In Admiralty.

*W. S. Flippin,* for libelant.

*H. C. Warinner,* for defendants.

HAMMOND, J.　This is a libel *in personam* against the officers and owners of a steam-boat for personal injuries.　The plaintiff is a "roustabout,"—a name by which negro deck hands on the steamers plying the Mississippi river and its tributaries are known.　He shipped on the Reno Macready for a trip up the St. Francis river. He alleges and proves by his own testimony and that of three other roustabouts that the mate beat him with a stick or club, severely bruising his arm and disabling him for several weeks.　The mate swears he did not strike him at all, and so does the captain, who saw the occurrence.　Another witness not connected with the boat also testifies that the mate did not strike the libelant.　There is no doubt, however, that on a cold night in January, when the ground was covered with water, this man was paid off, discharged, and made to leave the boat at a place where there was no accommodation for him; that, being wet from rain and mud, he had to go to a negro cabin some distance away, where he stayed all night, and the next morning was compelled to walk through the overflowed swamp some five miles to a railroad, where he walked the track about thirty miles to his home in Memphis.　The cause assigned for his discharge is that "he was no account;" that is, did not work satisfactorily.　He proves by himself and one of his witnesses that he begged to be allowed to stay on the boat, and offered to pay his way back to Memphis, which was refused.　This again is denied by the officers, who say that one Collins offered to hire him, and they thought he had done or would do so; but Collins is not produced to prove this, and it is denied by the libelant and his witnesses.

A very earnest argument is made by counsel for defendants to the effect that these roustabouts are a very degraded class of laborers, and so vicious in their instincts that they are uninfluenced by any ordinary consideration that would impel a man to do his work most efficiently; and that it would imperil the interests of commerce and obstruct the navigation of this river to apply to complaints like this the customary rules of law that govern the contract of sea-going mariners.　It is urged that nothing but the severest compulsion will make them work; that they understand this, and engage in the service with a knowledge of the fact that they may be subjected to rough measures to prevent them from shirking their labor under circumstances where inefficiency is disastrous to their employers.　There is a good deal of force in this, but it is the old-time argument in favor of flogging seamen and soldiers, and cannot override the humane policy of our statute which abolishes it in the army, in the navy, and "on board vessels of commerce." Rev. St. § 4611.　It is no more lawful to flog a "roustabout" than it is to so discipline a common seaman, and it never was lawful to beat and wound them with sticks and clubs, for which the

officers are liable, both civilly and criminally. Rev. St. § 5347; *U. S.* v. *Collins*, 2 Curt. 194. It is often done with brutish violence. I have seen them come about this court-house with a vague idea that in some way they were under the protection of the officers of the United States, and having the marks of violence upon them showing how cruelly they had been beaten. They have been sent to attorneys, but in some way it has been arranged so that this court has never had the opportunity of imposing the penalty of damages for such brutality. The ordinary remedies of withholding wages, discharging for misconduct, putting in confinement or in irons, and the like, must suffice as methods of discipline for inefficiency, if the penalties of the statutes by criminal prosecution for disobedience of orders do not apply. Certainly, beating cannot be sanctioned by the courts. The beating is not satisfactorily proven in this case, and the testimony of the only disinterested witness must turn the scale against the libelant on that point.

But these officers had no right to discharge this man at the place they did, late at night, and under circumstances which show that it was imposing upon him unnecessary suffering. His wages were paid him, but they might have been withheld, if it was just to do that, or used to pay for his shelter on the boat. I do not decide that he could not be discharged at all until the return of the boat, and express no opinion as to that; but he should not, for mere inefficient work, have been driven from the boat on a dark, cold, and wet night, at the time and place where he was compelled to go ashore. Common hospitality and humanity should have prevented this, and the admiralty law forbids it. The proper and humane care of even inefficient seamen is the duty of every master, and whatever he may lawfully do must be done with due consideration for this principle. 1 Conkl. Adm. 429–442.

It is not difficult to determine the measure of damages in this case. If severe beating had been proved, the court would yield to the demand for not less than $100; but it is disproved. He had been paid his wages, and might have come home on the cars, but chose to walk when he reached the railroad. I think $30 amply sufficient to compensate the libelant, and emphasize the determination of this court to insist on humane treatment even of "roustabouts." Decree accordingly.